1

2

3

4                    UNITED STATES DISTRICT COURT

5                          DISTRICT OF NEVADA

6                                * * *

7   UNITED STATES OF AMERICA,                 Case No. 2:21-CR-203 JCM (EJY)

8                          Plaintiff(s),                      ORDER

9          v.

10  PHILLIP BEASLEY, et al.,

11                         Defendant(s).

12

13          Presently before the court is defendants Phillip Beasley ("Beasley") and Jasmine Garcia's

14  ("Garcia") (collectively "defendants") joint motion to dismiss indictment for spoliation of

15  evidence.[1]  (ECF No. 28).  The United States of America ("the government") filed a response

16  (ECF No. 30), to which defendants replied (ECF No. 32).

17  **I.      Background**

18          This matter arises from criminal charges brought against defendants for conspiracy to

19  make a false statement in the acquisition of firearms and for making a false statement in

20  acquisition of firearms.  Specifically, the indictment charges Garcia with purchasing three

21  firearms on behalf of Beasley from Precision Armory, a federal firearms licensee located in Las

22  Vegas, Nevada (the "gun store").

23          The indictment alleges that after Garcia and Beasley entered the gun store, Beasley

24  pointed out several firearms to Garcia and handed her cash which she then used to purchase the

25  firearms.  (See ECF No. 28 at 3).  Further, it alleges that Garcia completed a Bureau of Alcohol,

26  Tobacco, Firearms, and Explosives Form 4473 Firearms Transactions Record ("form 4473"),

27  _____

28          [1] In the alternative, defendants move to suppress evidence (ECF No. 28 at 13), for an
    adverse inference jury instruction (id. at 16), and for an evidentiary hearing (id. at 18).

**James C. Mahan**
**U.S. District Judge**

1   wherein she represented that she was the "actual transferee/buyer of the firearm[s]," when she

2   was really acquiring the firearms on behalf of another.  (*See id.* at 4).

3   After the gun store's owners informed the government that Garcia was a suspicious

4   firearm purchaser, government observed footage from the gun store's video surveillance system.

5   The footage shows Beasley and Garcia entering the gun store, Beasley pointing to several

6   firearms, and Beasley handing Garcia cash.  Garcia is then shown filling out the first page of a

7   packet of paperwork, briefly speaking to a store employee, receiving and filling out a different

8   packet of paperwork, and finally using Beasley's cash to purchase the firearms.

9   According to the government, Garcia originally checked "no" to form 7743's question

10   21(a)—"Are you the actual transferee/buyer of the firearm(s) listed on this form and any

11   continuation sheet(s)[]?"  Though the footage has no audio component, the government contends

12   that the gun store's employee informed Garcia that she could not purchase a firearm unless she

13   was the actual buyer; so, she received a new form 7743 and checked "yes" to question 21(a)

14   instead.

15   In collecting evidence for this case, the government downloaded the gun store's

16   surveillance footage and collected the paperwork Garcia completed.  However, the government's

17   video files do not contain the timestamps that the gun store's internal systems displayed along

18   with the footage.  Further, in disclosing Garcia's paperwork to defendants, the government

19   originally provided just the first of six pages from the form 7743 Garcia first attempted to

20   complete.[2]

21   According to defendants, the government's failure to preserve the timestamps and failure

22   to provide the unmarked pages of the first packet violates defendants' constitutional rights to due

23   process.  Defendants now move to dismiss the indictment for spoilation of evidence, or, in the

24   alternative, to exclude the footage and first 4473 form, to include an adverse inference jury

25   instruction, and for an evidentiary hearing on the issue of preservation of the evidence.

26   . . .

27   _____

28   [2] The government has since provided the additional pages as an exhibit to its response. (*See* ECF No. 30 at 16–20).

James C. Mahan
U.S. District Judge

- 2 -

## II.     Legal Standard

"For destruction of evidence to rise to the level of a constitutional violation, a party must make two showings." *United States v. Sivilla*, 714 F.3d 1168, 1172 (9th Cir. 2013). "First, that the government acted in bad faith, the presence or absence of which 'turns on the government's knowledge of the apparent exculpatory value of the evidence at the time it was lost or destroyed.' " *Id.* (quoting *United States v. Cooper*, 983 F.2d 928, 931 (9th Cir. 1993). "Second, that the missing evidence is 'of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means.' " *Id.* (quoting *California v. Trombetta*, 467 U.S. 479, 489 (1984)). A showing of bad faith is required whether the evidence is materially exculpatory or "only potentially useful." *Id.*; *Arizona v. Youngblood*, 488 U.S. 51, 58 (1988).

When determining whether to impose a remedial jury instruction such as an adverse inference instruction, courts in the Ninth Circuit balance "the quality of the [g]overnment's conduct" against "the degree of prejudice to the accused." *Id.* (quoting *U.S. v. Loud Hawk*, 628 F.2d 1139, 1151 (9th Cir. 1979) (Kennedy, J., concurring)). The government bears the burden of justifying its conduct and the defendants bear the burden of demonstrating prejudice. *Id.*

## III.     Discussion

### A.     The government's failures to preserve the security footage timestamps and unmarked form 4473 pages do not rise to the level of a constitutional violation

To determine whether to dismiss the indictment or exclude evidence, the court first determines whether the government's failure to preserve the evidence rises to the level of a constitutional violation. To show that a constitutional violation occurred, defendants must show that the government acted in bad faith and left no reasonable evidentiary alternative to the lost evidence. Bad faith requires a showing that the government knew of the apparent exculpatory value of the evidence when it was lost. Absent bad faith, dismissal and exclusion are not justified.

As to the timestamps, the government downloaded the security footage directly from the gun store's video surveillance system roughly one week after the initial purchase on January 14, 2022. *See* Exhibit 1, Bates USA 0001, ch03_20210114112249.txt (listing January 20, 2021, as

the date of export for the corresponding video of footage from January 14, 2022).  While the timestamps were viewable on the gun store's internal surveillance system, they do not appear in the downloaded videos.  (*See* ECF No. 30 at 3–4).

The government argues that the timestamps were not apparently exculpatory at the time of the download.  Defendants do not specifically refute that position but argue that they "have no way of knowing what specific exculpatory information could have been contained" in the timestamps.  (ECF No. 28 at 9).  This is a tacit admission that the timestamps were not apparently exculpatory at the time the government downloaded the video.

Defendants do not provide or even proffer what exculpatory value was apparent from the timestamps when the government "lost" them during the download.  The crimes at issue do not carry an element requiring the government to prove that the guns were purchased at any specific time and the video is not so poor in quality that the defendants' identities and presence in the gun store can be seriously questioned.[3]

Therefore, defendants fail to show any bad faith on behalf of the government in collecting the evidence and "losing" the timestamps.  The court will neither dismiss the indictment nor exclude the videos from trial on the grounds of the government's failure to preserve the timestamps.

As to the "missing" form 4473 pages, defendants argue that "the complete form could reveal other inadvertent mistakes."  This argument is unavailing considering that the security footage clearly shows that Garcia marked only the first page of the first form.  *See* Exhibit 1, Bates USA 0001, ch03_20210114112249.avi at 4:00–8:00.[4]  Thus, the government's failure to provide the remaining pages in discovery does not rise to the level of a constitutional violation because there was no apparent exculpatory value to the "lost" pages; especially considering that

---

[3] While defendants argue that they "cannot provide an accurate response" to the government's request for an alibi defense (ECF No. 29), they do not argue that the timestamps will assist them in providing any actual alibi.

[4] Garcia is shown receiving the first form (*id.* at 4:00), filling out the first page of first form (*id.* at 4:20–6:10), flipping to the next page and putting her pen down without making a mark (*id.* at 6:14–6:25), speaking with the store clerk and continuing to write on the first page (*id.* at 7:05–7:40), and receiving a new form while the clerk took the first form away to another room (*id.* at 7:42–8:00).

the government has since provided the pages to defendants and the court.  (*See* ECF No. 30 at 16–20).

Therefore, even if defendants are unable to obtain comparable evidence by reasonably available means,[5] they fail to show that the indictment should be dismissed or that the evidence should be excluded from trial.[6]   Accordingly, the court DENIES their motion as to those grounds.

B.   The government's conduct does not prejudice defendants and justify an adverse inference jury instruction

In deciding whether to impose an adverse inference jury instruction, the court balances "the quality of the [g]overnment's conduct" against "the degree of prejudice to the accused." *Sivilla*, 714 F.3d at 1173 (quoting *Loud Hawk*, 628 F.2d at 1151).

In evaluating the government's conduct, the court considers whether the evidence was lost while in the government's custody, whether the government disregarded the defendant's interests, whether it negligently failed to adhere to established and reasonable standards of care for police, and, if the acts were deliberate, whether they were taken in good faith or with reasonable justification.  *Id.*

In evaluating the prejudice to the defendant, the court considers factors including, without limitation, the centrality of the evidence to the case, the importance of the evidence to establish the elements of the case or the motive or intent of the defendant, the probative value and reliability of the substitute evidence, the nature and probable weight of the inferences and kinds of proof allegedly lost to the defendant, and the probable effect on the jury from the absence of the evidence.  *Id.* at 1173–74.

---

[5] The court notes without holding that the time logs provided along with the security footage help account for a rough timeline of the corresponding footage, but do not directly replace the timestamps as provided.

[6] Defendants' arguments regarding the best evidence rule are better left for a motion in limine.  However, the court notes the exceptions to the best evidence rule provided by Federal Rules of Evidence 1004(a), (b).

James C. Mahan
U.S. District Judge

Having considered those relevant factors, the court holds that the government's conduct does not prejudice the defendants enough to justify an adverse inference jury instruction.[7]

As to the government's conduct, the evidence was not lost in the government's custody; the timestamps never transferred from the gun store's video surveillance system to the government's files.  (*See* ECF No. 30 at 16–20).[8]  Further, the government neither disregarded the defendants' interests nor negligently failed to adhere to reasonable standards of care for police.  The government downloaded the surveillance footage from the gun store; the downloaded footage merely does not provide the timestamps like the gun store's video surveillance system does, and there is no showing of standard practices that would have preserved the timestamps.  Finally, there is no suggestion that the losses were deliberate.[9]

As to the prejudice to the defendants, the probative value of the substitute evidence—the raw footage and time logs—makes up for the nature and probable weight of the kinds of proof allegedly lost to the defendant—which, at most, amounts to potentially revealing inconsistent statements of witnesses (*see* ECF No. 28 at 9).  Further, while the video itself is central to the case, the exact timestamps are not necessary to establish any element of the alleged crimes or the motive or intent of the defendants.  Finally, the probable effect on the jury is negligible.  Jurors are often tasked with making inferences of time based on circumstantial evidence; the government can call witnesses to establish a timeline and defendants can attack that timeline with reference to the absence of timestamps.

Therefore, the balance of interests weighs in favor of the government, and no remedial jury instruction is justified by the "loss" of the timestamps.  Accordingly, the court DENIES defendants' motion as to the request for an adverse inference instruction.

---

[7] As the government has since produced the unmarked pages of the first form 4473, the court considers just the timestamps for this analysis.

[8] Even if the court considered the government's viewing the timestamps on the surveillance system as having them in its custody, that alone would not outweigh the other factors.

[9] Even if they were, the government was reasonably justified in presuming the timestamps would carry over to the downloaded files.

James C. Mahan
U.S. District Judge

- 6 -

C.  An evidentiary hearing is not required because defendants fail to demonstrate that a significant, disputed factual issue exists

Defendants argue that an evidentiary hearing is required because the government makes factual assertions as to why the video at issue does not have timestamps without also providing declarations in support of those assertions.  (ECF No. 32 at 6).  As previously discussed, the timestamps had no apparent exculpatory value at the time they were "lost" and are not necessary to establish any elements of the alleged crimes.  Defendants' arguments to the contrary are, at most, conclusory.

Therefore, defendants fail to show a "significant," disputed issue that requires an evidentiary hearing to resolve.  Accordingly, the court DENIES defendants' motion as to the request for an evidentiary hearing.

**IV.   Conclusion**

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that defendants' motion to dismiss indictment, to suppress evidence, for an adverse inference jury instruction, and for an evidentiary hearing (ECF No. 28) be, and the same hereby is, DENIED.

DATED April 28, 2022.

_____
UNITED STATES DISTRICT JUDGE

James C. Mahan
U.S. District Judge

- 7 -